GARDEN, JUDGE:
This claim was submitted for decision on the Notice of Claim, Answer and Affidavits of J. R. Lewis, a former member of the Department of Public Safety, Kenneth R. Fultz, the administrator of the Montgomery General Hospital, and J. Zane Summerfield, the Prosecuting Attorney of Fayette County.
The pleadings and affidavits establish that on August 17, 1972, one William Lowell Samples was arrested by members of respondent as a result of breaking and entering, and as an incident to his arrest he was shot by one of the arresting officers. He was thereupon taken by a member of the Department of Public Safety to claimant’s hospital for treatment where he was admitted and thereafter discharged on August 29, 1972. While in the hospital he was guarded by members of respondent on an around the clock basis. Upon his discharge, members of respondent took Samples before a Justice of the Peace and upon waiving a preliminary hearing, Samples was then taken by members of respondent to the Fayette County Jail where he was turned over to the jailer. Samples was later indicted, plead guilty and was sentenced to the West Virginia Penitentiary. The affidavits clearly establish that the Sheriff of Fayette County had no contact with the case until Samples was delivered to his jailer on August 29, 1972.
The claimant billed the County Court of Fayette County for its charges in the amount of $2,898.59, which the affidavits establish to be a reasonable charge. The County Court refused to pay the bill, and an attempt was then made to tax the hospital bill as part of the court cost by an Order of the Circuit Court of Fayette County entered in February of 1973. The State Auditor however refused to approve the same, and the claimant having no other course to follow has thus filed its claim in this Court.
*161 The refusal of the Fayette County Court to pay claimant’s bill was based on a 1965 Attorney General’s opinion, 51 Ops. Att’y. Gen. 348 (1964-1966). The facts underlying that opinion stated briefly were as follows: one Pack was seriously wounded by gunfire by members of the Department of Public Safety during the breaking and entering of a store in Logan County and was thereafter taken to the hospital by members of the Department of Public Safety*. While the Sheriff of Logan County was in an automobile outside” of the store and participated in watching for the suspects to appear, he took no part in the actual arrest, nor did he, directly or indirectly, authorize the taking of Pack to the hospital or authorize or direct the hospital to render treatment.
The Attorney General was of the opinion that the County Court of Logan County was not legally responsible for the bill, stating as follows:
“Where a member of the State’s Department of Public Safety wounds and arrests a prisoner and delivers such prisoner to a hospital for necessary treatment, without authorization from a county sheriff, the county sheriff has neither actual or constructive custody of the prisoner; such prisoner is considered to be a State prisoner, and the liability for paying his medical and hospital expenses rests not with the county court, but with the State.”
In reaching his ypinion the Attorney General relied principally upon the provisions of Code 7-8-2 which reads partly as follows:
“... When any prisoner is sick the jailer shall see that he has adequate medical and dental attention and nursing, and so far as possible keep him separate from other prisoners. Any such medical care and nursing as the jailer may be required to furnish shall be paid for by the county court...”
We agree with the opinion of the Attorney General, and we further agree that the County Court of Fayette County was justified in refusing to pay claimant’s bill. The factual situation in the present case is much stronger for such a refusal than it was in Logan County. In the Logan County matter the Sheriff of Logan County did partially participate in the arrest of the prisoner, but here there is no' evidence that the Sheriff of Fayette County even knew of the arrest and subsequent hospitalization.
We can find no statutory mandate casting an obligation on the State to pay a hospital bill in cases such as this, but we are of the *162 opinion that a moral obligation to pay such a claim exists, and we therefore award the claimant the sum of $2,898/69.
Award of $2,898.59.